410 So.2d 1220 (1982)
William STRACENER, Plaintiff-Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellee.
No. 8649.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
Writ Granted April 27, 1982.
Baggett, McCall, Singleton & Ranier, William B. Baggett, Lake Charles, for plaintiff-appellant.
Raggio, Cappel, Chozen & Berniard, Richard B. Cappel, Lake Charles, for defendant-appellee.
Before GUIDRY, SWIFT and STOKER, JJ.
*1221 SWIFT, Judge.
This is a worker's compensation case filed by the plaintiff, William G. Stracener, against United States Fidelity & Guaranty Company, the insurer of plaintiff's employer, Nichols Construction Company. Mr. Stracener appeals from a judgment which awarded him compensation benefits for 150 weeks for the loss of a hand under LSA-R.S. 23:1221(4)(e), with penalties and an attorney's fee.
On February 4, 1980, the plaintiff was aiding in the installation of tubes in a refinery heater when his right thumb was caught between a tube and its support, traumatically amputating the distal phalanx portion of the thumb. The accident also resulted in considerable loss of skin and nail of his thumb. Surgery involving the partial removal of the proximal phalanx of the right thumb and a skin graft was performed on February 4.
At the time of the accident plaintiff was employed by Nichols Construction Company as a boilermaker foreman at the Cities Service plant in Calcasieu Parish. He has been a boilermaker for 39 years and worked exclusively as a boilermaker foreman for the four years preceding the accident. Stracener returned to his position with Nichols on February 12, 1980, and worked as a boilermaker foreman to date of the trial except for brief intervals unrelated to his injury. The plaintiff's doctor rated his disability as 38 percent of the hand and 75 percent of the thumb.
All medical bills and compensation totaling approximately $7400.00 ($148 per week for 50 weeks) were paid by the defendant before the trial. However, no compensation benefits were paid to the plaintiff until October 13, 1980, after suit had been filed. Weekly benefits were terminated on January 19, 1981, following payment for the 50th week.
The trial court, after finding a "significant loss of the function" of plaintiff's hand, awarded compensation for the total loss of a hand under LSA-R.S. 23:1221(4)(e), plus the statutory penalties and a $1000.00 attorney's fee.
The plaintiff argues on appeal that the trial court erred in failing to award 450 weeks for permanent partial disability under LSA-R.S. 23:1221(3) and that the attorney's fee is inadequate.
The defendant answered the appeal, seeking a reduction of the award to the loss of a thumb under LSA-R.S. 23:1221(4)(a). Alternatively, the defendant contends the court erred in awarding maximum benefits for the total loss of a hand under LSA-R.S. 23:1221(4)(e) instead of a proportionate sum as mandated by subsection (4)(o) thereof dealing with the permanent partial loss of a member.
We will first consider whether the plaintiff is partially disabled within the meaning of LSA-R.S. 23:1221(3). That provision states in part:
"(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond ... a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable *1222 under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3)." [Emphasis added.]
Plaintiff argues that under this statute an employee is considered partially disabled if either he is unable to perform the duties in which he was customarily engaged when injured or he is unable to perform duties of the same or similar character for which he was fitted by education, training and experience. He does not deny that he can perform the duties of a boilermaker foreman which are supervisory in nature, but contends that he cannot do many of the tasks of a boilermaker journeyman which include climbing and working with tools. Stracener's testimony in this regard was supported by the business manager of his union and also to some extent by the attending physician. The union agent said, however, that a foreman only works with his tools if there are no more than six men on the job. The record contains no evidence that the plaintiff has ever had to use tools in his position as a foreman. Because of his seniority and work experience plaintiff will be sent out by the union to fill the position of boilermaker foreman as long as such positions are available. Although there is an abundance of this work at present, there are indications it may decrease in the future because of worsening economic conditions.
LSA-R.S. 23:1221(3) was interpreted by this court in McElhaney v. Belden Corporation, 376 So.2d 539, 544 (La.App. 3 Cir. 1979), as follows:
"We are convinced by the evidence that plaintiff's situation falls squarely within the definition of `partial disability' as the legislature has defined it in LSA-R.S. 23:1221(3), as amended by Act 583 of 1975. Under the clear wording of the amended statute, if an employee is prevented from returning to his former employment or work of a similar character but is not prevented from engaging in gainful activity at some job, he is considered partially disabled. See Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3rd Cir. 1978); and LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283 (La.App. 1st Cir. 1977)." [Emphasis added.]
In the instant case, plaintiff returned to his former employment as a boilermaker foreman on February 12, 1980, eight days after the accident, and there is no indication that the partial loss of the function of his hand or thumb hindered the performance of his duties in any way. When this employment terminated on October 7, 1980, Mr. Stracener was able to secure another job as boilermaker foreman on October 14, 1980, and he worked exclusively as a foreman from that date until the trial. Thus, plaintiff's injuries have not prevented him from returning to work of the same or similar character as he was doing when injured.
In a rather similar case, Chipman v. Insurance Co. of North America, 389 So.2d 432 (La.App. 4 Cir. 1980), involving finger amputations of an experienced operator of a coil line machine, the court said:
"This employee, however, is 57 years old with a third grade education, whose exclusive working experience has been in the operation of machinery and vehicles. These factors raise the question of total or partial disability, aside from pain, because of the possibility that such an employee might become an odd-lot, and might be unable to compete, in the general labor market. See §§ 276, 279, Malone-Johnson. We resolve this issue against the employee and find him not totally or partially disabled within the meaning of the law, principally because he has been employed for almost three years now in the same gainful occupation as he was before the accident. Ash worth v. Elton Pickering, Inc., 361 So.2d 940 *1223 (La.App. 3d Cir. 1978), writs denied, is inapposite. See discussion in § 279, Malone-Johnson."
The fact that the plaintiff may not be able to perform all the duties of a boilermaker journeyman, should the occasion ever arise for him to do so, is of no great significance in this instance, because he had exclusively worked as a foreman for four years prior to the accident and he has continued to do so for more than a year thereafter. In view of the remoteness of the possibility that Mr. Stracener will ever have to perform the tasks of a journeyman in his occupational future, we cannot say that the trial court was manifestly in error in not finding that he is partially disabled within the meaning of LSA-R.S. 23:1221(3).
Also, we do not believe that it erred in awarding benefits for loss of a hand instead of for loss of a thumb.
If the evidence fails to relate the injury to the hand as a whole in any manner other than that the thumb or finger forms a component part of the hand, then the court must limit the remedy to the loss of a thumb or finger. Nash v. Knoblock, 381 So.2d 404 (La.1980). However if the injury can be related to the whole hand rather than restricted to a finger, compensation is awarded for the disability of the hand. See Ellis v. Bemis Bro. Bag Company, 146 So.2d 667 (La.App. 4 Cir. 1962).
In Bemis a roller fell across the worker's right hand injuring the tip of the index finger and his knuckle. At trial the judge observed the plaintiff was unable to properly close his hand. The medical testimony related the injury to his whole hand rather than restricting the injury to his finger and the compensation award was based on the scheduled benefit for disability to the hand.
In the present case the physician testified that the scars extended past the two phalanges of the thumb to inside of the webbing of the hand and that damage to the nerves extended into the hand. Further testimony established limitation of the first metacarpal of the hand due to the surgery and on occasions some pain radiates into the hand. Considering this evidence, we find no manifest error in the judge's finding that the plaintiff's injuries and resulting disability were related to the hand as a whole rather than just the thumb.
We are convinced, however, that the award for total loss of use of the hand was clearly wrong.
While the plaintiff's injuries did extend slightly into the hand, there has been no actual loss of any part thereof except the distal and part of the proximal phalanges of his right thumb. The preponderance of evidence is to the effect that such loss will hinder plaintiff's use of tools considerably, but there is no medical testimony or other evidence to substantiate a virtual 100% loss of the function or use of his hand. The only testimony as to a specific loss thereof was that of Dr. Phillips, who estimated that such loss of function amounted to 38% of the hand.
LSA-R.S. 23:1221(4)(o) states:
"In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member."
Therefore the proper award in this case under the statute is 38% of 662/3% of plaintiff's weekly wages of $550.00, or $139.34 per week for 150 weeks, subject to a credit for the weekly compensation previously paid.
The facts of this case are clearly distinguishable from those before the supreme court in Naquin v. Uniroyal, Inc., No. 81-C-1081, rendered September 28, 1981, 405 So.2d 525 (La.1981). Mr. Naquin had been employed by Uniroyal at its plant for about 24 years. During the six years preceding his accident he was an operations control coordinator whose duties were principally supervisory in nature. Several weeks after *1224 sustaining a shoulder injury the plaintiff returned to his former job at the same salary and he was able to carry out most of his duties. However, because of a permanent disability of his arm, Naquin was unable to perform some acts of manual labor which were incidental to his supervisory job that he had done previously. These physical tasks "were expected by his employer and important to the effective performance of his work as a supervisor of other workers." Because the plaintiff could no longer perform the employment duties in which he was customarily engaged when injured, the supreme court determined that he was entitled to benefits for partial disability.
In the present case there is no indication that the plaintiff's disability has affected the performance of his duties as a boilermaker foreman in any way. Nor was it established that he will ever have to do the manual tasks a journeyman boilermaker, for which he is handicapped to some extent. Consequently, his compensation award is based on LSA-R.S. 23:1221(4)(o).
Under our jurisprudence the trial court is afforded great discretion in setting the amounts awarded for attorney's fees. Jones v. Brown & Root, Inc., 379 So.2d 872 (La.App. 4 Cir. 1980); and Carter v. Roy O. Martin Industries, Inc., 336 So.2d 1002 (La. App. 3 Cir. 1976).
The trial in the present case lasted less than a day, only four witnesses having testified. Under the circumstances, while we think the amount awarded was low, we cannot say that there was such an abuse of discretion by the trial court as to warrant our amending his judgment in this respect. See Dufrene v. St. Charles Parish Police Jury, 371 So.2d 378 (La.App. 4 Cir. 1979); and Simon v. Commercial Union Assurance Company, 389 So.2d 1367 (La.App. 3 Cir. 1980).
For the foregoing reasons, the judgment of the district court is amended to reduce the weekly compensation benefits awarded from $148.00 to $139.34 per week for 150 weeks, subject to credits for the amounts heretofore paid. Otherwise, it is affirmed. The costs of this appeal are assessed to the plaintiff-appellant.
AMENDED AND AFFIRMED.