432 So.2d 847 (1983)
Betha Lou CULP
v.
BELDEN CORPORATION.
No. 82-C-1968.
Supreme Court of Louisiana.
May 23, 1983.
Rehearing Denied June 24, 1983.
*848 Roy S. Halcomb, Jr., Broussard, Bolton & Halcomb, Alexandria, for applicant.
Donald R. Wilson, Gaharan & Wilson, Jena, for respondent.
CALOGERO, Justice.
We granted plaintiff's application in this workers' compensation case to determine whether a back injury which occurred during the course and scope of employment renders the relator totally and permanently disabled. The trial court found her not totally and permanently disabled and instead awarded her one hundred weeks of benefits under La.R.S. 23:1221(4)(p) (usefulness of a physical function permanently impaired).[1] The Court of Appeal affirmed.[2] We granted plaintiff's writ application. 421 So.2d 246 (La.1982). Upon review of the law and the evidence, however, we agree with the lower courts' resolution of the matter and affirm the award accordingly.
The facts of the injury and the subsequent medical diagnosis and treatment are set forth in the Court of Appeal opinion at 416 So.2d 1312-13:
Claimant, a licensed practical nurse and certified audiometric technician, was employed *849 at Belden Corporation's Jena plant as "plant nurse." On May 25, 1978, while stooping over to retrieve or store supplies under an examining table in the first-aid room at the plant, she sustained the injury which was subsequently diagnosed as a low back strain. She received conservative treatment from her family doctor, who referred her to Dr. C.W. Lowery, an orthopedic specialist in Alexandria. Plaintiff continued working at Belden until September 17, 1978, at which time, she stated, she felt she could not fulfill the responsibilities of her job. She moved to Beaumont, Texas in January, 1979.
The medical testimony was that plaintiff had preexisting conditions of mild lordosis (sway back) and mild scoliosis (curvature of the spine), which were aggravated by the low back strain. The treatment prescribed by both specialists, Dr. Lowery of Alexandria and Dr. Starr of Beaumont, was conservativepain medication, muscle relaxers and exercise to strengthen the muscles of the lower back. The consensus of expert opinion was that the plaintiff has a weak back, which she must learn to live with and which will cause her mild and intermittent pain in the future. She should not do any heavy lifting (over 25-30 pounds) nor excessive bending or stooping. The opinion of all the medical experts was that the claimant was able to return to work as an LPN in a job not requiring heavy lifting or excessive stooping or bending.
Mrs. Culp reported her accident to her superior, who was in charge of processing workmen's compensation claims, the day after it occurred. Claimant completed the report, this being one of her duties. She was paid benefits from the time she stopped working as Belden's plant nurse through the date of the trial, but there is a dispute concerning an interruption in payment.
From the Court of Appeal's affirmance of the trial court's award of benefits under La.R.S. 23:1221(4)(p) and denial of penalties and attorney's fees, relator seeks review by this Court on both issues: (1) whether Ms. Culp is totally and permanently disabled under Louisiana's odd lot jurisprudence; and (2) whether penalties and attorney's fees are owed for an arbitrary and capricious withholding of benefits by the defendant.
Clearly under our recent jurisprudence, odd lot status may be afforded injured workers who subsequently perform the duties of their job only in substantial pain.[3] In Wilson v. Ebasco Services, Inc., 393 So.2d 1248 at 1252 (La.1981), the reasons for such a classification was ably set forth as follows:
It is in this sense that the injured worker who performs his tasks in pain falls within the ambit of the general odd-lot concept: an employee who experiences substantial pain when performing routine physical tasks may find that employment opportunities are severely limited. Normally, an employer would find it less desirable to hire someone who must endure serious pain while working than someone who does not; the fact of pain may restrict the scope of activities in which an employee can be engaged, and may result in the functional inability to perform certain duties. Moreover, recurrent pain may cause frequent absenteeism on the part of the disabled worker, either because of the inability to work when the pain is particularly intense or because of the necessity of seeking medical treatment. These factors, along with others, place the employee who must work in pain at a competitive disadvantage to healthy workers in finding employment. See Malone & Johnson, Workers' *850 Compensation (2d ed. 1980), § 277 at 628-29. There is also a possibility that the injured employee may be more susceptible to a second injury, or that the prior injury may be aggravated in the course of employment, making the employer liable for the resulting disability. Depending upon the circumstances of the case, a worker who seeks employment despite the presence of severe and continuing pain may find that employment opportunities are gravely limited. In such a case, the injured worker is entitled to an award for total disability.
Most recently, this Court stated in Lattin v. HICA Corporation, 395 So.2d 690 at 693 (La.1981):
[A] worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. (Emphasis supplied.)
These cases underscore the fact that in compensation situations where pain is the linchpin to make out a prima facie case for a worker's classification in the odd lot category, the pain accompanying routine physical tasks and attempts to return to work must be substantial, serious, intense and/or severe. In Wilson, the plaintiff was unable thereafter without qualification to perform any task that involved bending, stooping or lifting. She was unable to do anything but the lightest of chores around the house, was even unable to push a grocery cart and perform the simplest of physical tasks without incurring substantial pain. 393 So.2d 1251, 1253. A pain clinic evaluation recommended that she be admitted to the pain unit program in order to obtain pain coping skills. Supra at 1253. In Lattin, a maintenance worker who had sustained a severe foot injury requiring surgery and resulting in a disability of twenty to thirty percent thereafter was inactive and constantly complained about the pain and throbbing in his foot. Objective medical findings supported his claim of pain and a pain specialist diagnosed Lattin as having a mild to moderate reflex dystrophy complicated by rather severe anxiety. 395 So.2d at 694. See also, Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).
Once a prima facie case has been made out for classifying the worker in the odd lot category, then the employer must show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence. Lattin, supra.
In this case, both lower courts inferentially addressed both questions: the merit of Ms. Culp's odd lot classification and the actual availability of work. Upon our review of the record, we find that Ms. Culp did not make out a prima facie case for classification as an odd lot worker. We therefore pretermit the discussion of the actual availability of work and whether work available to her in Jena, Louisiana would be sufficient to disqualify her for total and permanent disability benefits after her voluntary move to Beaumont, Texas.[4]
The trial judge in his written reasons for awarding benefits for loss of physical function rather than for total disability focused on the degree of residual limitation and the ability of Ms. Culp to work at her former job as plant nurse at the Belden plant in Jena. In pertinent part, he stated:

*851 [W]itnesses testified concerning the duties of plant nurse at Jena, and I am convinced that they do not require any excessive stooping, bending or lifting that should be of any problem to this plaintiff.
Plaintiff's duties included some secretarial responsibilities including being the employee who completed the average weekly wage of workman's compensation benefits for workers claiming benefits under the Workman's Compensation Act.
* * * * * *
Plaintiff probably does have some residual limitations on her ability to perform some duties that might be required of a nurse at some places of employment. Nevertheless, she is obviously physically capable of returning to work at the Belden Plant. This she has not done because she and her husband have moved to Texas and she has obviously not attempted to return to Belden since then as the distances involved preclude any commuting.
Upon review of the medical and lay evidence, the appellate court found no clear error in the finding of fact by the trial court that Ms. Culp was not disabled from returning to employment in the practical nursing profession.[5]
We have here then a case in which both lower courts have found that the plaintiff at the time of trial was not required to work in substantial pain nor at a substantial disadvantage in the labor market because of her residual limitations.[6]
On appellate review, the trial court's factual findings concerning work-related disability should be given great weight and should not be disturbed where the evidence before the trier of fact supports a reasonable factual basis for the trial court's findings, unless clearly wrong. Crump v. Hartford Accident & Indemnity Company, 367 So.2d 300 (La.1979).
We find no error in the factual conclusions of both lower courts that claimant's residual pain did not appreciably limit the type of work available to her and that it did not greatly diminish her ability to compete in the labor market.
Ms. Culp's several doctors were of the opinion that she should hereafter avoid excessive lifting, bending, or stooping. When urged to define those terms, Dr. Lowery said that she should avoid lifting more than twenty pounds. Dr. Ware placed the figure at fifty pounds. When Dr. Starr, her treating physician in Beaumont, had to place a percentage figure on her disability for insurance *852 purposes following her myelogram, he placed it "in the neighborhood of five to ten percent permanent partial disability."
Of the degree of Ms. Culp's disability at the time of trial, Dr. Starr stated that while he did not recommend nursing positions which would involve excessive lifting or straining, she was not precluded from working at other nursing tasks. Dr. Raso, whom Ms. Culp consulted for a second opinion when Dr. Starr stated surgery was not recommended, was of the opinion that Ms. Culp could do any of the duties of a licensed practical nurse other than those involving heavy lifting (twenty to thirty pounds) or persistent bending. Dr. Ware, the last physician to examine Ms. Culp testified that Ms. Culp experienced some minimal residual discomfort with exercise: "[S]he no longer had any kind of constant back pain, but that she had intermittent, mild backache."
Her residual limitations then are that she cannot do tasks involving persistent bending, stooping, squatting, climbing, or lifting excessive weights. According to trial testimony she cannot, for instance, hoe a garden, operate a tiller, mow the yard nor pick strawberries. These tasks, however, are not analogous to those of the licensed practical nursing profession. Testimony at trial revealed that the activities of a licensed practical nurse are not significantly different from the ordinary activities of every day life. Lay witnesses attested to the fact that the plaintiff does her own grocery shopping; washes, folds and puts away her and her family's clothing; can sit in a chair to watch television; and has taken a long car trip comfortably with periodic rest stops. We find that the lower courts were not clearly wrong in their factual determination that Ms. Culp was not called upon to work in substantial pain.
We likewise find that Ms. Culp's residual limitations do not appreciably limit the type of work available to her nor do they greatly diminish her ability to compete in the labor market.
In addition to her professional practical nursing skills, Ms. Culp is able to type, file, do other clerical work and administer hearing tests as a certified audiometric technician. She can perform those clerical, supervisory and diagnostic duties associated with occupational, school, or medical office nursing. Additionally, Ms. Culp has worked as a private duty nurse in Beaumont, Texas. There was expert testimony at trial that those duties were not significantly more strenuous than those of a plant nurse, which job all experts agreed she was physically able to perform at time of trial.
Given all of the foregoing, we find that Ms. Culp has not established a prima facie case for classification as an odd lot worker. There was no evidence that she was working in substantial pain or that she was likely to have to work in substantial pain upon return to work as a licensed practical nurse. Therefore she was not placed at a substantial disadvantage in the competitive labor market.[7]
*853 The lower courts' decision to award the plaintiff benefits under La.R.S. 23:1221(4)(p)[8] and to deny her claim to total and permanent disability benefits is not clearly wrong.
Finally on the matter of penalties and attorney's fees, we affirm the appellate court's finding no error in the denial of such fees by the district court. The record reflects that the defendant was not arbitrary and capricious in discontinuing payments temporarily when Ms. Culp returned to work in Beaumont and there was a legitimate and substantial question over whether benefits were still due and if so, how much. The defendant made a good faith and expeditious effort to resolve the difference, resulting in restoration of benefits without undue delay. Additionally, the record does not reflect grounds for our overturning the lower courts' finding that Belden was not arbitrary and capricious in not reimbursing Ms. Culp for various small travel expenses.

Decree
For the foregoing reasons, we affirm the judgment of the Court of Appeal.
AFFIRMED.
DIXON, C.J., concurs in the result.
DENNIS, J., dissents and assigns reasons.
WATSON, J., dissents with reasons.
WATSON, Justice, dissenting.
The majority errs in concluding that Ms. Culp's inability to do heavy lifting, prolonged sitting or persistent bending do not partially disable her from performing the duties of a licensed practical nurse. Licensed practical nursing requires stooping, bending, and lifting: turning patients; positioning them in bed; assisting them in and out of bed, and to and from wheel chairs.
Dr. C.W. Lowrey, the orthopaedic surgeon who treated Betha Lou Culp after her accident, testified that she had a lumbosacral strain with resulting low back pain, right sciatic notch tenderness, nerve root irritation and limited back motion. During the course of his treatment, commencing on June 27, 1978, she had persistent symptoms. Betha Culp attempted to continue her work at Belden and last worked there on September 19, 1978, but could not perform her duties. When Dr. Lowrey advised that she consider part-time work, it is uncontradicted that Belden Corporation refused to make this available.
On January 26, 1979, Betha Culp moved to Beaumont, Texas, with her husband, after it had already been determined that she was unable to resume her former duties at Belden. It is significant that there was no plant nurse at Belden before she was hired, and no plant nurse has been hired to take her place.
*854 There was testimony that a plant nurse or occupational nurse is usually required to be a registered nurse rather than a practical nurse. Not only would this position be generally unavailable to a licensed practical nurse, but a bad back would be a consideration in hiring. There are only about a hundred and ten jobs available in Louisiana for occupational health nurses and no present openings.
According to Ms. Culp, she was forced by economic considerations to work a few days as a private duty nurse in Beaumont, Texas, but was unable to continue because of her back problem. She could not turn the patients, pull them up in bed, stoop over to bathe them and help them in and out of bed. Although she had previously worked for St. Elizabeth's Hospital in Beaumont, her application for employment there was rejected because of her bad back.
Dr. Harry Starr, a neurosurgeon in Beaumont, Texas, commenced treating Betha Culp in February of 1979. At that time she had stiffness and arthritic changes in her lower back. In April of 1979, Betha Culp had a flare-up of her back problem and was hospitalized by Dr. Starr. A myelogram showed that Betha Culp's discs or the ligaments over the discs have a tendency to bulge slightly and she has an imperfect "bad back" which became disabling after her accident. Dr. Starr decided that conservative treatment rather than surgery was indicated. Dr. Starr has continued to see Ms. Culp periodically and said that Betha Culp has a definite permanent partial disability. Although she is not totally disabled from working as a licensed practical nurse, Dr. Starr pointed out that employers refuse to hire people with back trouble. The evidence is that the only work available to Betha Culp is private duty nursing and Dr. Starr specifically stated: "I do not recommend that she do bedside nursing where she has to do excessive lifting or straining, now or ever. That would be fool hardy." (Depo., p. 47)
The majority errs in finding that Ms. Culp's disability does not limit the type of work available to her nor diminish her capability to compete in the labor market. The position of plant nurse is one for which she is under qualified. Hospitals and similar institutions will not hire her because of her bad back and the patient care required in most private duty nursing is beyond her capabilities. Thus, she is at a substantial disadvantage in the labor market and there is no evidence that employment is available to her as a licensed practical nurse.
Because of her permanent partial disability, benefits should have been awarded under Section (3) of LSA-R.S. 23:1221 rather than the lesser benefits for impairment of a physical function which were awarded under Section (4)(p). Jacks v. Banister Pipelines America, 418 So.2d 524 (La., 1982).
I respectfully dissent.
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons stated by Justice Watson in his dissenting opinion.
NOTES
[1] La.R.S. 23:1221(4)(p) reads in pertinent part:

In cases not falling within any of the provisions already made, ... where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks.
[2] Culp v. Belden Corp., 416 So.2d 1311 (La. App. 3rd Cir.1982).
[3] Even before the adoption of the odd lot doctrine in Louisiana, our courts were awarding total disability benefits to claimants who could only perform the functions of their job in pain and suffering. See generally, Malone and Johnson, Workers' Compensation § 277, 13 La. Civ.Law Treatise 627 et seq. and cases cited in Malone and Johnson supra § 273, note 42, 13 La.Civ.Law Treatise 604 (1980) and those cited in 2 Larson, Workmen's Compensation Law § 57.51, note 5 (1980).
[4] Both courts found that Ms. Culp was able to work at her former job as plant nurse and that most likely she could have returned to it had she not moved to Beaumont. Both parties agree that Ms. Culp was only terminated as a Belden employee when she tendered her resignation to the company upon her husband's relocation to Beaumont, Texas. The defendant suggests that Belden offered Ms. Culp her former job and that she refused because she was then residing in Beaumont, Texas. The plaintiff disputes this offer of a job by the Belden Corporation. Both agree, however, that Belden would not have allowed her to return to work at the Jena location on a part time basis.
[5] In this regard, this case differs from that of Lastrapes v. CNA Ins. Co., 401 So.2d 658 (La. App. 3rd Cir.1981) cited by J. Laborde in his dissent to the majority appellate opinion. Culp v. Belden, 416 So.2d 1311 at 1315 (La.App. 3rd Cir.1981). In Lastrapes, the trial court resolved inconsistencies in favor of the plaintiff, finding her working in substantial pain and working at the accommodation of the hospital since her husband was its administrator. In this case, the trial court resolved any factual differences against the plaintiff's total and permanent disability. See also, Crockett v. St. Paul Ins. Co., 413 So.2d 949 (La.App. 1st Cir. 1982) [Court of Appeal affirmed a trial court award of total and permanent disability to a respiratory technician who was unable to work without experiencing substantial pain after a back injury]; Cottonham v. Rockwood Ins. Co., 403 So.2d 773 (La.App. 3rd Cir.1981) [A district court judgment was upheld which found a reinforcement iron worker foreman was working in substantial pain because of economic necessity, was only able to obtain a job through friends and acquaintances and was only able to perform his work with the help of fellow workers]; Lemoine v. Marksville Industries, Inc., 391 So.2d 528 (La.App. 3rd Cir.1981) [Court of Appeal affirmed a trial court's finding totally and permanently disabled a forty-seven year old pants presser who had sustained back and shoulder injuries].
[6] This case then appears before us in a posture different from those wherein total and permanent disability is awarded in the first instance and we are called upon to review whether such a determination favorable to the plaintiff is correct. See, e.g., West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979) in which a forty-eight year old nurse's aide with a fourth grade education and able to do only manual labor was found to be totally and permanently disabled by the trial court after she injured her back while trying to lift a patient; and Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976) wherein the trial judgment was favorable to the plaintiff laborer with painful residual back instability resulting from disc surgery following an accident.
[7] This case is markedly distinguishable from that of Wilson v. Ebasco, 393 So.2d 1248 (La. 1981) where despite the great weight given the disposition of factual questions by the lower courts, we reversed a trial court and awarded benefits to the plaintiff for total and permanent disability. In Wilson, the trial court offered no written reasons for his judgment that the plaintiff was only partially disabled. In this case, by contrast, we have the benefit of the trial judge's reasons for his decision. In Wilson, the plaintiff was to avoid any activity that involved bending, stooping or lifting, without qualification. In this case, the plaintiff is restricted from heavy lifting, persistent bending or persistent stooping. The plaintiff in Wilson was fired by her employer for excessive absences. Ms. Culp remained an employee of Belden until such time in January, 1979, some seven months after her injury, that she submitted her resignation upon her husband's transfer to Beaumont, Texas. The Wilson plaintiff's myelogram pinpointed the possibility of ruptured discs. A laminectomy was performed and two ruptured discs were in fact removed at the lumbar and lumbosacral levels, after which in Wilson it was stated that the condition could improve to such an extent that she might be able to find regular employment. A year after surgery, however, her pain was such that a pain clinic evaluation recommended her admission into a program to teach pain coping skills. Ms. Culp's myelogram did not result in a surgery recommendation and her residual pain is classified as minimal.
[8] The question was also raised as to whether Ms. Culp might be entitled to an award under La.R.S. 23:1221(3) for permanent partial disability rather than under La.R.S. 23:1221(4)(p): "cases not falling within any of the provisions already made, ... where the usefulness of a physical function is seriously permanently impaired." We find that the trial judge was correct in his award designation.

The evidence establishes that Ms. Culp was physically able to resume the responsibilities of the job of plant nurse, since they did not involve excessive bending, stooping, or lifting. These were "the same duties in which she was customarily engaged when injured [and] duties of the same or similar character for which she was fitted by education, training or experience." Plaintiffs to whom benefits for permanent and partial disability have been awarded under La.R.S. 23:1221(3) have not been found physically able to resume their former jobs. See, Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982) [Martin's former job involved the lifting and carrying of heavy loads which task he was no longer able to perform]; Stracener v. U.S.F. & G. Co., 410 So.2d 1220 (La.1982) [the loss of half of his thumb prevented the plaintiff boilermaker from performing the duties in which he was engaged when injured as well as those for which he was fitted by education, training, and experience]; Allor v. Belden, 393 So.2d 1233 (La.1981) [Allor could not return to his former job as a wire drawer which involved lifting heavy spools of wire]; Simpson v. S.S. Kresge Company, 389 So.2d 65 (La.1980) [plaintiff could not return as sales supervisor of domestic hardware department because the job required frequent bending, stooping and lifting].