DOMENGEAUX, Judge.
Plaintiff, Rickey A. Deaville, sued defendant, J.B. Talley & Company, Inc., his employer, for worker’s compensation benefits, alleging that he is permanently and totally disabled as a result of a work related accident which occurred on October 11, 1983. He claims that he was injured when he slipped on a section of drainage pipe and hit his back on concrete siding. The district judge ruled that the plaintiff was not totally and permanently disabled and dismissed his case.
It is undisputed that the plaintiff was involved in a work related accident. Immediately upon being informed of the plaintiff’s injury the defendant began treating the claim as compensable. On the day following the accident the plaintiff was examined by Dr. Ethel Smith. Mr. Deaville was treated in Dr. Ethel Smith’s office, diagnosed as having an acute ligamentous strain, prescribed a muscle relaxant and pain medicine, and was asked to stay off of work and return for a follow up appointment in one week.
Two days later, on October 14, 1983, Mr. Deaville was examined by Dr. Ethel Smith’s husband, Dr. George Smith, a general surgeon, in the emergency room of Lafayette General Hospital. Dr. George Smith diagnosed the plaintiff as having acute musculoligamentous lumbar strain and admitted him to the hospital for treatment with IV analgesics, muscle relaxants, *968 and physical therapy. The plaintiff was discharged from Lafayette General on October 21, 1983, and was directed to limit his activities and to return to Doctor Smith for an appointment in two weeks.
The medical records indicate that on October 22, 1983, at 1:25 A.M. the plaintiff was seen by Dr. Fletcher Sutton, a New Iberia orthopedist, at the emergency room of Iberia General Hospital. The plaintiff arrived at the hospital complaining of lower back pain. Doctor Sutton diagnosed plaintiff as having lumbar strain.
The plaintiff was admitted into Iberia General Hospital where he underwent treatment until his discharge on October 25, 1983. The plaintiff was readmitted to Lafayette General Hospital on October 26, 1983. On this day he was examined by Dr. George Smith and Dr. Daniel Dunlap, a neurologist. During his stay in the hospital, the plaintiff underwent a myelogram and a CAT scan; both tests were interpreted as being normal.
On October 28, 1983, the plaintiff, disregarding the advice of his physicians, checked out of the hospital.
On being advised that the plaintiff had left the hospital against medical advice, the defendant suspended compensation benefits. The period of suspension lasted from October 28, 1983, until November 8, 1983, when Mr. Deaville contacted the defendant’s adjuster and indicated a willingness to continue treatment.
Shortly thereafter the plaintiff requested that he be examined by Doctor Lahaskey, a general practitioner. The defendant’s adjuster refused this request as he testified that it would be a step backward to seek a diagnosis by a general practitioner after diagnosis and treatment had already been made by a general surgeon and a neurologist.
Mr. Deaville continued to be treated by Dr. George Smith until January 9, 1984. Doctor Smith testified by way of deposition and stated that the January 9, 1984, examination evidenced no objective symptoms of a lower back injury except that plaintiff walked with a stooped posture. Doctor Smith discharged the plaintiff from his care and testified that he felt the plaintiff could return to his regular employment duties. Doctor Smith’s final diagnosis was a lumbar strain, which, as of January 9, 1984, had resolved.
Doctor Smith testified that his opinion and recommendation that Mr. Deaville had recovered was corroborated when he and his nurse[1] watched the plaintiff walk through the parking lot after his examination of January 9, 1984. Doctor Smith stated that although during the examination the plaintiff shuffled and stooped over as he walked, following the examination he walked briskly and erectly through the parking lot and entered his vehicle with apparent ease.
The defendant received verbal notice that Doctor Smith discharged the plaintiff to return to active employment and upon that notice terminated the plaintiff’s compensation benefits as of January 9, 1984.
On January 10, 1984, the defendant’s adjuster contacted the plaintiff and offered additional medical treatment with Dr. Fred Webre, an orthopedic surgeon. The adjuster arranged an appointment with Doctor Webre and notified the plaintiff of the appointment. The plaintiff did not keep the appointment with Doctor Webre, but instead, began treatment at the Bryant Chiropractic Clinic in New Iberia.
The plaintiff initially submitted a claim with the Louisiana Office of Worker’s Compensation seeking informal resolution of this matter. A recommendation by that office was rejected and resulted in this litigation.
The plaintiff filed suit on April 3, 1984, praying that he be granted: (1) worker’s compensation benefits based upon his total and permanent disability, (2) 12% damages on the total amount of his claim based upon *969 the defendant’s arbitrary and capricious refusal to pay the amount of the claim, and (3) attorney’s fees.
Following a trial, the district judge concluded that the plaintiff had been totally temporarily disabled, but that as of the January 9, 1984, examination when he was discharged by his treating physician the disability had abated. The district judge then entered judgment on behalf of J.B. Talley & Company, Inc. and dismissed the plaintiff’s case.
The plaintiff appeals the decision of the district court and raises four assignments of error. However, our determination that the trial court’s decision was correct precludes a discussion of all but the first assignment.
Basically the plaintiff-appellant argues that the district judge committed manifest error and/or abuse of discretion in finding that the plaintiff’s disability had abated as of January 9, 1984. The appellant contends that he continued to be totally disabled as of the date of the trial and that the testimony of his chiropractor and lay testimony as to his pain and disability were disregarded by the district court. He avers that the evidence he presented as to his disability far outweighed the defendant’s evidence as to his lack of disability and that this inequity resulted in a manifestly erroneous trial court decision.
On appellate review, the trial court’s factual findings on the issue of disability are entitled to great weight. They should not be disturbed unless clearly wrong. Culp v. Belden Corporation, 416 So.2d 1311 (La. App. 3rd Cir.1982), writ granted, 421 So.2d 246 (La.1982), affirmed, 432 So.2d 847 (La. 1983).
We have thoroughly reviewed the record in this case and cannot say that the district judge committed manifest error in this case.
First, we can find no place in the record where the plaintiff’s chiropractor testifies that the plaintiff is disabled. The chiropractor would only say that the plaintiff “would benefit under chiropractic care.”
Second, as the trial judge noted in his written reasons for judgment, on cross-examination the chiropractor deferred to the normal CAT scans which were taken under the direction of Doctor Smith and Doctor Dunlap and he was unable at trial to say what precisely was causing plaintiff’s complaints of pain.
Third, there is in the record evidence of the use of a CAT scan, myelogram, and the repeated use of x-rays, all of which were interpreted by at least three medical doctors to show that the plaintiff had no neurological disorder. This evidence coupled with the observation of Doctor Smith and his nurse convinced Doctor Smith, the plaintiff’s treating physician, that plaintiff was capable of returning to work.
The plaintiff also introduced evidence from himself, his wife, and his landlord that he was in pain and walked hunched over.
The rule of law as to the evidence which the district court must consider in a disability case was first enunciated in Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975). There the Supreme Court held:
“It is generally true that medical testimony which is not in conflict cannot be overcome by lay testimony. Nevertheless, in every case it is the totality of the evidence, medical and lay, which must be examined by the court in making its determination of whether to grant an award for disability. Great weight, almost to the point of exclusion of other evidence, is given to uncontradicted medical evidence which is directed toward a complex scientific question. However, in all cases, it is the judge’s function to determine the weight which is to be accorded the medical testimony as well as the lay testimony.”
We cannot say that the district judge disregarded the plaintiff’s lay testimony or the testimony of the plaintiff’s chiropractor. The trial judge obviously felt that the evidence presented by the testimony of the defendant’s expert witnesses and the medical records should be afforded greater *970 weight. Our review of the record convinces us this was not manifestly erroneous, in fact it is manifestly correct.
For the above and foregoing reasons the decision of the district court is affirmed. All costs on appeal to be assessed against plaintiff.
AFFIRMED.

. The trial court’s reasons for judgment indicate that Doctor Smith’s nurse testified to the same facts as Doctor Smith regarding the plaintiffs appearance in the parking lot. Because of technical problems the court reporter was unable to transcribe her testimony into the record.