DUFRESNE, Judge.
Defendant, National Tea Company, appeals from a decision in favor of the plaintiff, Robert Estopinal, granting temporary total worker’s compensation benefits. The original judgment dated October 27, 1988, original judgment awarded worker’s compensation benefits and all medical costs associated with Estopinal’s injury. However, in an “Amending and Supplemental Judgment”, dated November 10, 1988, the trial court added “... legal interest on the amount of-compensation benefits due and owing him (Estopinal) from the date said benefits were terminated until paid, as well as all costs of these proceedings.... ” From these judgments National has sus-pensively appealed.
As noted in the record, the second (amending) judgment substantially altered the original judgment. Pursuant to Louisiana Code of Civil Procedure Article 1951:
“A final judgment may be amended by the trial court at any time with or without notice, on its own motion or motion of any party:
(1) To alter the phraseology of the judgment, but not the substance, (our emphasis); or
(2) To correct errors of calculation.”
*1135 It follows, that in absence of granting a motion for new trial, the trial court lacked jurisdiction to alter the original judgment, which granted substantive changes in favor of Estopinal. Mellon Financial Services Corp. v. Cassreino, 499 So.2d 1160 (La.App. 5th Cir.1986).
Accordingly, we find the trial court’s “Amending and Supplemental Judgment” without judicial effect and limit this appeal to a review of the original judgment.
Robert Estopinal, a 47 year old male, alleges an on-the-job injury while working as a pressman at National’s printing department. This department supplies all of the printed advertisements to National’s stores, commonly known as “National” or “Canal Villere” located throughout the New Orleans metropolitan area.
As pressman, Estopinal’s duties required him to operate different printing presses. He was responsible for loading and unloading large amounts of paper, setting and adjusting the printing presses, as well as the actual printing of cardboard and paper advertisements. The operation of the printing presses placed certain physical demands upon Estopinal.
There was repetitive bending, stooping, lifting and carrying of heavy boxes of paper and cardboard. Many of the singular printing assignments routinely performed by Estopinal consisted of printing 10,000 to 15,000 copies and often under strict deadlines.
On March 17, 1987, Estopinal was assisting in the repair of a printing press which had jammed during operation. While bending over and pulling on one of the belts located within the press, he felt a pulling sensation in his back and immediately began to experience back pain. National requested that Estopinal be seen by Dr. Edna Doyle for evaluation and treatment. Doyle reported that Estopinal was disabled from working as a pressman as of March 17, 1987. Approximately IOV2 months later, on February 4, 1988, Dr. Doyle issued a medical report to National advising that Estopi-nal could return to work, provided he refrain from performing any repetitive bending, stooping or heavy lifting. Additionally, National sent Estopinal to be examined by Dr. Harold Stokes (an orthopedic surgeon). Dr. Stokes indicated that Estopinal could return to work if he did not perform repetitive bending, stooping, or lifting objects over 35 pounds.
Estopinal returned to work on February 1, 1988, and began operating a printing press for approximately 6 hours until, allegedly, he began experiencing low back pain and was physically unable to perform his employment duties. Estopinal was examined by Dr. Doyle and Dr. Steiner, an associate orthopedic surgeon with Dr. Stokes, who prescribed 2 days rest from work and then to return to National February 4, 1988, limited to only 4 hours of work per day for the first 2 weeks and then return full time. However, his full-time employment should be limited to the extent that he not perform repetitive bending, stooping or lifting in excess of 35 pounds.
When Estopinal returned to National on February 8, 1988, with medical instructions of limited time and physical restrictions, he was advised by his supervisor, Bob Louvi-ere, that he would not be able to perform his duties under these restraints. Later that day he was informed by Michael Strong (Louviere’s supervisor) to return home.
On February 1, 1988, National terminated Estopinal’s worker compensation benefits. He filed suit after being rejected relief through the administrative process and seeks reinstatement of his temporary total disability payments from February 1, 1988 until completion of his medical treatment when he will be able to return to his former regular job duties as pressman or physically able to engage in some other occupation. Furthermore, he seeks payment of medical expenses incurred as the result of treatment received from Dr. Marilyn Panger (chiropractor) and Dr. Charles Billings (orthopedic surgeon).
After trial of this matter, the court granted judgment in favor of Estopinal reinstating his temporary total worker compensation benefits and all medical costs associated with his injury. From this judgment National has suspensively appealed.
*1136 Estopinal alleges that he sustained a work related accident on March 17, 1987, and re-injured his lumbar spine on February 1, 1988, and as a result he is physically incapable of returning to work as a pressman performing his regular employment responsibilities. National asserts that Es-topinal did not sustain a job accident on February 1, 1988, and if assuming so, is presently capable of returning to his work as a pressman.
The fact that Estopinal suffered a low back injury on March 17, 1987, and was medically advised to refrain from repetitive bending, stooping and lifting objects over 35 pounds is uncontroverted. Disputed is the fact that Estopinal is presently disabled from returning to work at National as a pressman or other gainful employment as a result of his lumbar injury. National claims that Estopinal work related duties do not require him to perform repeated bending, stooping or lifting heavy objects (things over 35 pounds). In support of its contention the parties produced a film of the job duties of a pressman to demonstrate the actual body mechanics and physical requirements necessary to operate National’s printing presses. This film was shown to all four medical expert witnesses, Edna Doyle, M.D.; Harold Stokes, M.D.; Charles Billings, M.D.; and Marilyn Pan-ger, D.C.
The job duties of a pressman require certain physical capabilities, and significant limitations, such as bending, stooping or lifting objects in excess of 35 pounds would diminish a person’s ability to execute the work responsibilities. At National, Es-topinal is sometimes required to unload boxes of paper weighing over 35 pounds from the stock shelf to a hand truck. This is routinely performed as a consequence of printing 10,000 to 15,000 printed copies. Estopinal is required to open boxes of paper and physically bend and reach down for paper and cardboard in order to load the press. He is then required to adjust the printing press according to the size of paper or cardboard. Should the machine jam, he must further bend over and reach into the press in order to make the necessary adjustment to free any paper. Finally, he must take the finished printed copies, which require bending over and picking the paper from the machine. We find these physical activities inconsistent with the Es-topinal’s medically prescribed restrictions.
In a worker’s compensation suit the employee bears the burden of proving the work-related accident, causing the injury, by a preponderance of the evidence. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). First he must prove that an accident as defined by LSA-R.S. 23:1021 occurred and secondly, that the accident caused the disability complained of, LSA-R.S. 23:1031. The term “accident” must be interpreted liberally in favor of the injured employee, LSA-R.S. 23:1317.
The worker’s compensation act does not require that the employment cause the disability. Rather, the chain of causation required by the statutory scheme as adopted by LSA-R.S. 23:1031 is that the employment causes the accident, the accident causes injury, and the injury causes disability.
The medical testimony establishes that Estopinal is physically unable to satisfactorily perform his customary and usual employment obligations or other work without the onset of disabling back pain.
It is settled law in this State that a “... reviewing court must give great weight to the factual conclusions arrived at by the trier of fact, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.1978). The record in this case reveals sound reasoning for the court’s conclusion and the factual finding itself have been reached by analysis of applicable legal principles. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119 (La.1982) the Supreme Court enunciated the following legal principles:
*1137 3) “Where there is proof of an accident and of the following disability without any intervening cause it is presumed that the accident caused the disability. It is not necessary to determine the exact cause of the disability. The criterion for causal connection between the accident and the disability is: “has the accident changed the plaintiffs condition so as to render him disabled and unfit for his former employment?”
4) The presumption referred to in number three above is rebuttable. Its effect is to shift the burden of proof to the defendant. The defendant bears the burden of coming forward with enough contrary evidence to rebut the presumption.
5) The ultimate determination concerning disability under the worker’s compensation statute is by the courts, not the medical experts. The courts apply legislative definitions to the medical science in order to achieve an equitable and just result. Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all credible evidence.” (citations omitted)
Applying the above to our facts, we find that prior to the accident on March 17, 1987, Estopinal was capable of performing all the required duties of a pressman. His work-related accident of March 17, 1987, and by virtue of the second work-related accident of February 8, 1988, which aggravated his pre-existing injury, have caused his disability. Following this second accident he has been disabled from performing work as a pressman. We presume his disability was caused by the accident/accidents, and we find that National did not rebut that presumption.
Estopinal contends that he is entitled to benefits for temporary total disability due to constant pain which prevents him from engaging in gainful work which requires repetitive lifting, bending, stooping or lifting heavy objects. National argu.es that the evidence presented at trial fails to establish any disability.
As stated earlier, the finding of disability within the framework of the worker’s compensation law is a legal, rather than purely a medical determination. It is the totality of the evidence, both medical and lay testimony, which must be examined by the trial court in making its determination on the issue of disability and it is the function of the court to assess the weight to be accorded such testimony. The opinion of a physician or other medical expert does not necessarily determine a legal disability and the court may accept or reject the opinion expressed by a medical expert, depending upon what impression the qualifications and credibility of that expert makes upon the court.
The record reflects that Estopinal is presently unable to resume his former employment duties as a pressman and is presently under medical care and we find sufficient evidence to establish temporary total disability.
In order to recover temporary total disability benefits Estopinal must prove by a preponderance of the evidence that he is unable to engage in any self-employment or gainful occupation for wages, whether or not of the same or a similar occupation as that in which he was customarily engaged when injured, and whether or not an occupation for which he, at the time of injury was particularly fitted by reason of education, training or experience. LSA-R.S. 23:1221(1). Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App. 2nd Cir.1987).
A claimant is considered temporarily totally disabled under the “odd lot” doctrine when he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonable stable market for them does not exist. This determination can only be made after evaluating claimant's physical and mental capacity, education and training. It should be noted that,
“An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that *1138 he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee’s residence.”
Lattin v. Hica Corporation, 395 So.2d 690 (La.1981).
Furthermore, a worker who cannot return to any gainful employment without suffering substantial pain falls within the ambit of the “odd lot” doctrine when his pain renders him unable to perform any service for which a reasonably dependable market exists. Culp v. Belden Corp., 432 So.2d 847 (La.1983). To qualify as substantial, the pain accompanying routine tasks or attempts to return to work must be serious, intense or severe. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981).
Although the physicians were unable to pinpoint a definitive cause of Esto-pinal’s pain, they all agreed that he had suffered a lumbar injury which restricted his physical movements. Furthermore, they all interpreted Estopinal’s pain as genuine.
Accordingly, we find that Estopinal is entitled to an award of temporary total disability benefits until his disability ceases. This award is subject to the rights of any of the parties to seek modification of this judgment pursuant to LSA-R.S. 23:1331 should Estopinal’s condition change.
The award of worker compensation benefits shall be reinstated from February 1, 1988 and made continuous until otherwise modified. Additionally, National is liable for all medical expenses incurred as a result of the accidents of March 17, 1987 and February 1, 1988, and shall pay for all future medical treatment and care until Estopinal is physically capable to return to gainful employment. All costs to be paid by National.
AFFIRMED.