381 So.2d 404 (1980)
Estelle NASH
v.
Lucille J. KNOBLOCK et al.
No. 65325.
Supreme Court of Louisiana.
February 15, 1980.
Rehearing Denied April 7, 1980.
Arthur L. Ballin, Frank C. Dudenhefer, New Orleans, for plaintiff-applicant.
Leon C. Vial, III, Hahnville, for defendant-respondent.
SUMMERS, Chief Justice.
This is a workmen's compensation case in which the defendant appealed the judgment of the trial court and the Court of Appeal reversed the trial court. We granted a writ of certiorari. 376 So.2d 321.
On November 27, 1975 Estelle Nash was employed at a grocery store owned by Lucille J. Knoblock and her husband, who is since deceased. While operating an electric meat cutting machine in the course and scope of her employment, the plaintiff accidentally amputated the distal interphalangeal joint, that is the first or outermost joint, of the middle finger of her left hand. The treating physician, Dr. David J. Vial, a general surgeon, wrote a letter on June 23, 1976 to the plaintiff's counsel which was entered at trial upon stipulation of both counsel:
"This patient was first seen by me in the St. Charles hospital on November 26, 1975. She gave a history of sustaining a traumatic amputation of the distal middle finger of the left hand a short time earlier when she cut it with a slicing machine. She was taken to surgery where a repair of the distal middle finger was done. The patient did well following the surgery and was discharged from the hospital November 28, 1975.
"She was followed in the office on an out-patient basis until March 22, 1976. She continued to improve and at that time I felt she could be discharged from *405 my care with less than five percent disability of the left hand."
On July 26, 1976 the plaintiff was examined by Dr. R. C. Grunsten, an orthopaedic surgeon. Dr. Grunsten examined the injured extremity, took a history from the plaintiff, ordered X-rays and later studied the X-ray pictures. Prior to trial he was deposed by attorneys for the plaintiff and his deposition was admitted at trial by stipulation of both counsel. Dr. Grunsten testified that the injury appeared to have healed well but that there was approximately thirty degrees loss of flexion in the proximal interphalangeal joint. He found the injuries revealed by the physical examination and X-rays consistent with the history reported by the plaintiff, that is, with amputation by a meat cutting machine. He further testified: "As a result of the loss of the distal portion of the long finger, it was my feeling that this patient had incurred a forty to forty-five percent partial disability referable to the left long finger." He noted that this estimate was founded upon the belief that the patient should have received physical therapy to restore flexion to the PIP joint. He estimated that if such flexion were not restored, his estimate of loss of function to the finger would be increased to from sixty to sixty-three percent. Upon further questioning by plaintiff's counsel, Dr. Grunsten stated that the disability to the finger could be equated to disability to the hand as a whole by taking twenty percent of the disability to the digit as disability to the hand, that is, approximately eight to ten percent disability to the hand based on his estimate of forty to forty-five percent disability to the finger. On the same basis, he answered counsel's further questions to the effect that his estimate of a sixty to sixty-three percent disability without restoration of the lost flexion would convert to a twelve to thirteen percent disability to the hand as a whole.
About four months after she was examined by Dr. Grunsten, the plaintiff filed a petition in the 29th Judicial District Court naming as defendants Lucille Knoblock and her husband Roy, owners of Roy's Grocery in Boutee, Louisiana. The petition alleged that Estelle Nash was employed in the meat department of Roy's Grocery, that she injured her finger in the manner described above, and that she was paid $1.25 an hour for an average of 54 hours per week. The petition then prayed for a judgment of compensation at the rate of $25.00 per week for 150 weeks together with a 12% penalty, attorney's fees and interest.
The matter was tried upon the parties' stipulations as to Nash's wages, the fact of the accident, the loss of the distal portion of the long finger of Nash's left hand, that the minimum compensation applicable under the act would be $25.00 per week, that the report of Dr. Vial and the deposition of Dr. Grunsten be submitted in evidence, and that certain medical bills remained outstanding. The case was submitted to the trial judge who gave judgment in favor of plaintiff for the sum of $25.00 per week for 150 weeks, for the two medical bills and the expert witness fee of Dr. Grunsten at the deposition, but denied the requested 12% penalty.
The defendant took a devolutive appeal arguing that the trial court erred in awarding judgment to the plaintiff upon the basis of a disability to her hand. The defendant pointed out that had the plaintiff suffered a complete loss of the finger, the schedule of benefits contained in Section 1221(4) of the Compensation Act would have limited her recovery to twenty weeks' compensation at $25.00 per week. Instead, the trial judge awarded the same amount as the schedule provided for loss of an entire hand, that is, $25.00 per week for 150 weeks. Further the defendant argued that Section 1221(4)(o) prohibits an award of more compensation for any injury to a member than the schedule provides for loss of the entire member.
In opposition to the defendant-appellant's claim, the plaintiff-appellee, Nash, argued that Section 23:1221(4)(c), the schedule for loss of a finger, was not determinative of Nash's entitlement to recovery. Rather, she argued, where the medical experts testified to a percentage disability to *406 the entire hand, the provisions of Section 1221(4)(e), the schedule for loss to the hand, should apply.
The following pertinent portions of Section 1221(4) are as follows:
. . . . .
"(4) In the following cases, the compensation shall be as follows:
. . . . .
"(c) For the loss of any other finger [than a thumb or first finger], ... sixty-six and two-thirds per centum of wages during twenty weeks.
. . . . .
"(e) For the loss of a hand, sixty-six and two-thirds per centum of wages during one hundred fifty weeks.
. . . . .
"(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member."
The Court of Appeal in the instant case held that
"... It stands to reason that any partial loss of a finger will result in some percentage of the loss of the hand. This fact, however, does not defeat the application of the scheduled benefits for the loss of a finger where there exists no significant loss of function of the hand."
372 So.2d 777, 779.
The court noted in passing that plaintiff had returned to a similar type of work little more than two months after the accident, and applied the finger schedule of Section 1221(4)(c) to amend the trial judge's award, reducing the compensation to $25.00 per week for twenty weeks, subject to a credit of $250.00 already paid the plaintiff by the defendants.
Plaintiff's application for a writ of certiorari assigned three errors in the decision of the Court of Appeal: 1) that the court incorrectly applied two earlier cases to the present case; 2) that the court incorrectly distinguished a third earlier case from the instant case; and 3) that the court denied compensation for loss to the hand when the medical testimony showed a loss to the hand of between 5 and 13 percent.
In her first assignment, Mrs. Knoblock argues that where the Court of Appeal cited two cases in support of its conclusions and decided that in those two cases, as in the case at bar, the medical testimony "related to the percentage of disability both to a finger and to a hand", in fact in the cited cases the testimony of the medical experts "established that the disability could be LIMITED to the FINGER ALONE."
The first of the two cases thus cited by the Court of Appeal and questioned by the plaintiff was Babineaux v. Great American Insurance Company, 245 La. 718, 160 So.2d 591 (1964). While working as a carpenter, Babineaux suffered an injury that necessitated the surgical amputation of his left index finger at the distal interphalangeal joint. He sought recovery for a permanent partial disability to the hand under the same provision as did the plaintiff in the case at bar, Section 1221(4)(e). One physician testified at trial, to the effect that on a chart devised by the American Medical Association for evaluating disability to the hand, Babineaux had suffered an 11% functional disability to the left hand as a result of the accident. The trial judge therefore cast the defendants for the scheduled compensation for a period of one hundred fifty weeks. The Court of Appeal certified the question to the Supreme Court which held that where the only evidence in the record was the testimony to the effect that the disability was 11% of the hand as a whole, the Court should apply the provisions of Section 1221(4)(o) to prorate disability to the member against the total allowed for loss of the member. For reasons which are not clear, the Court applied a different text than had the testifying physician to come up with an estimated 102/3% disability to the *407 left hand from the injury to the index finger. As 102/3% of the allowance for loss of a hand was less than the statutory minimum weekly award, the plaintiff was allowed the minimum compensation per week for the number of weeks specified in the schedule for loss of an index finger. In reaching this conclusion, the Court was moved by the consideration that under the schedules as then constituted, it appeared that no provision of Section 1221 could apply to the loss of only one phalanx of any finger or toe other than the thumb or big toe, unless under the proration mandated by Section 1221(4)(o).
The second case cited by the Court of Appeal and attacked by the plaintiff is Guardalabene v. Tenneco Oil Company, 246 So.2d 708 (La.App. 4th Cir. 1971). There the plaintiff suffered an injury resulting in amputation of the distal phalanx of the left thumb. The operating surgeon testified that the disability amounted to 50% of the thumb and 20% of the hand. A general and industrial surgeon who had treated the plaintiff and an orthopaedic surgeon to whom he had referred the plaintiff both testified that the thumb represents approximately 50% of the function of the hand, that loss of the distal phalanx of the thumb could not be separated from loss of function to the hand, and that the plaintiff had sustained a 25% loss of function of the hand. The Court of Appeal held:
"The medical testimony establishes that plaintiff's disability is no more than normally would be expected following loss of the distal phalanx of his thumb and is limited to that loss. Even though the amputation necessarily results in a percentage disability to the entire hand, as the loss falls squarely within the strict wording of the statute relative to the thumb, plaintiff cannot recover compensation beyond the maximum provided by LSA-R.S. 23:1221(4)(a) and (k). See Babineaux v. Great American Insurance Company, 245 La. 718, 160 So.2d 591; Spencer v. Kaiser Aluminum and Chemical Corp., La.App., 152 So.2d 215."
246 So.2d 708, 710. Thus the decision clearly turned on the specific provision of Section 1221(4)(k) that loss of one phalanx of a thumb is to be considered as equal to the loss of one-half of the thumb, with proportionate compensation.
Contrary to the plaintiff-appellee's contention, there is nothing in the case now before the bar to distinguish it from Guardalabene insofar as the appellate court in each case applied the schedule specifications to determine the appropriate compensation in spite of medical testimony relating the disability to the hand as a whole. Medical testimony as to disability is not determinative of the compensation to be awarded where the legislature has provided a specific remedy and the medical testimony fails to take the injury out of the statutory specification. In Babineaux, Guardalabene and in the case at bar the testimony fails to relate the injury to the hand as a whole in any manner other than that the finger forms a component part of the hand. Thus the injuries in all three cases were clearly restricted to the fingers involved and thus the recoveries were clearly restricted to the scheduled compensation mandated by the legislature. Cf. Newell v. United States Fidelity & Guaranty Company, 368 So.2d 1158 (La.App. 3d Cir. 1979); Kimble v. Maryland Casualty Company, 360 So.2d 522 (La.App. 2d Cir. 1978). The plaintiff's first assignment of error is thus without merit.
In a second assignment of error the plaintiff contends that the Court of Appeal should not have distinguished the instant case from Ellis v. Bemis Bro. Bag Company, 146 So.2d 667 (La.App. 4th Cir. 1962). In that case the injured worker was feeding material to a roller on a machine when the roller fell across his right hand. The tip of the index finger was injured, as was its knuckle. At trial, the judge observed apparent injury to the knuckle and that the plaintiff was unable properly to close his hand. The medical testimony was unanimous that the injury could be related to the whole hand rather than restricted to a finger, and the trial court awarded injury based on the scheduled compensation for disability to a hand. The Court of Appeal *408 affirmed, particularly noting the trial judge's personal observations of the plaintiff's injured hand. Thus it is apparent that Ellis is on its face to be distinguished from the instant case and that the second assignment of the plaintiff at bar is without merit.
Plaintiff's third assignment contends that the testimony of both physicians in the instant case showed a loss of use in the function of the hand as a whole. Dr. Vial did indeed report a loss of less than 5% in his letter, but the circumstances under which it was written are unknown and the content is too limited to justify any conclusion that he might have been identifying any disability other than that which, as the courts in Babineaux and Guardalabene noted, must necessarily accrue to the whole when one of its parts is injured. Dr. Grunsten testified that plaintiff sustained an injury to one finger; only when questioned by her counsel whether the injury to the single finger could be related to the hand as a whole did he indicate that the proportion of the hand represented by a single finger could be used to reduce a percentage disability to one finger to a percentage disability to the whole hand. Further, he indicated that even to him it was an even question whether the middle finger involved in this case should be related to the whole hand or treated as an individual digit. Where the legislature has explicitly provided for the compensation to be based on a single finger, there is no merit in the contention that the schedule for the whole hand should apply.
For the reasons assigned, the decision of the Court of Appeal is affirmed. This appeal is to be at the cost of the plaintiff appellant.
DIXON, CALOGERO and DENNIS, JJ., dissent.