436 So.2d 693 (1983)
Linda PARKS, Plaintiff-Appellee,
v.
LOUISIANA HEALTH CARE ASSOCIATION, et al., Defendants-Appellants.
No. 83-75.
Court of Appeal of Louisiana, Third Circuit.
July 21, 1983.
Rehearings Denied August 31, 1983.
Writ Denied November 18, 1983.
*694 Gist, Methvin, Hughes & Munsterman, Victor H. Sooter and Steven W. Cook, Alexandria, for defendants-appellants.
James T. Lee, Marksville, for plaintiff-appellee.
Before DOMENGEAUX, CUTRER and STOKER, JJ.
STOKER, Judge.
This is a suit for worker's compensation benefits in which the plaintiff, Linda Parks, was awarded benefits at the maximum rate of $89.33 per week for temporary total disability from December 5, 1981 to May 23, 1982, and the minimum compensation of $26.80 per week for permanent partial disability for 450 weeks.
Defendant, Colonial Nursing Home, appeals claiming that benefits for temporary total disability should have been deemed terminated as of February 12, 1982, and that any benefits awarded after that date should have been made on the basis of a schedule loss of a finger rather than for partial disability. Plaintiff answers the appeal asserting that she is totally and permanently disabled. In the alternative, she asserts that the amount of compensation for partial disability should have been at the rate of $89.33 per week. She also reasserts her demands for penalties and attorney's fees.
In the original petition plaintiff named as defendants Louisiana Health Care Association and Colonial Nursing Home, Mrs. Parks' employer. Colonial is a member of the Association and has its worker's compensation insurance with Ranger Insurance Company. Although Ranger is a partnership of members of the Association, it is a separate entity. The plaintiff did not appeal a trial court judgment dismissing Louisiana Health Care Association as a defendant, and that judgment is final. Plaintiff's counsel attempted to amend the petition the day of trial and add Ranger as a defendant. The trial judge refused to allow the amendment, and this ruling has not been appealed. Colonial is the only defendant involved in this appeal.
For reasons set out below, we affirm the award of benefits for temporary total disability but reverse the award for partial disability. In place of the latter we award benefits for a schedule loss.

FACTS
On December 5, 1981, while employed as a nurse's aide at Colonial Nursing Home, Mrs. Parks fractured a bone in the end of her right middle finger when she caught it between a door and an iron bed frame. A splint was applied and pain medication was prescribed by Dr. Zerangue in the emergency room where she sought treatment.
Mrs. Parks was seen by Dr. Bryan McCann throughout the month of December. His report dated January 8, 1982 indicates that Mrs. Parks suffered severe pain during that time and an attempt by her to return to work on December 14 was unsuccessful. Dr. McCann also reported a prior break to the same bone which Mrs. Parks stated had completely healed at the time of this accident. This report is the only evidence concerning Dr. McCann's treatment of Mrs. Parks. It covers a period from December 7 until December 30, during which time the broken finger remained in a splint and Mrs. Parks was continued on pain medication.
*695 Dr. L.J. Mayeux, a family practitioner, testified at trial. He first saw Mrs. Parks on December 15, 1981, at which time she was not able to work. Dr. Mayeux did not see her again until August 10, 1982, at which time she was complaining of pain in all joints of her right middle finger and in her forearm. At that time Dr. Mayeux testified that Mrs. Parks was beginning to have signs of tendonitis and bursitis in her arm and he referred her to Dr. Joe Morgan, an orthopedic surgeon who specializes in hand injuries. On August 10 and subsequent visits of August 20 and September 10, Dr. Mayeux did not believe that Mrs. Parks could return to work. On September 10, he recommended that she return to Dr. Morgan and consider surgery as an alternative.
Dr. Morgan who saw Mrs. Parks on one occasion (August 13, 1982) on referral from Dr. Mayeux, testified by deposition that he would not disqualify her from working because of the injury to her finger. His diagnosis was that Mrs. Parks suffered from traumatic arthritis of the injured joint of her right middle finger and tendonitis of her right elbow. Dr. Morgan testified that he could not relate the elbow problem to the finger injury. He assigned a disability or physical impairment rating to Mrs. Parks' finger of 40% and to the hand of 6%. Dr. Morgan fully discussed two surgical procedures which could be performed on Mrs. Parks to relieve the pain in her finger. Neither of these operations would have any effect on the physical impairment.
The treating physician in this case is Dr. P.M. Davis, Jr., an orthopedic surgeon, whose deposition was admitted into evidence at trial. He first saw Mrs. Parks on December 18, 1981, at which time he felt that Mrs. Parks could not work. On January 29, 1982, after being informed that Mrs. Parks worked as a nurse's aide, Dr. Davis recommended that she return to work in two weeks. He also advised that she should continue to use the splint on her finger at all times. On February 12, Dr. Davis recommended that Mrs. Parks begin removing the splint for short periods of time, but that she could return to work wearing the splint during working hours. At her next visit on February 26, Dr. Davis recommended that she continue to use the splint while working for the next four to six weeks. Despite the doctor's recommendations during this time, Mrs. Parks appears to have made no effort to return to work.
On April 29, 1982, Dr. Davis examined Mrs. Parks and found that she was using her finger fully. At this time Mrs. Parks was complaining of a mild pain in her forearm which Dr. Davis did not relate to the finger injury. He did not see Mrs. Parks again until August 2 at which time he stated that she had definitely developed tendonitis in her injured finger.
Dr. Davis testified further that Mrs. Parks could continue to work although she should be careful. She may still have pain but should be able to work with it. Dr. Davis assigned a disability rating of 15% to the finger and declined to assign a rating to the hand.
Payment of benefits to Mrs. Parks was terminated on May 23, 1982, on the basis of a report from Dr. Davis dated May 25, 1982. This report was based on Dr. Davis's April 29 examination.

DURATION OF TOTAL DISABILITY
Mrs. Parks claims to be totally and permanently disabled on the basis that she cannot return to work without suffering substantial pain. Colonial asserts that Mrs. Parks was only temporarily totally disabled from the time of the accident until February 12, 1982, the date Dr. Davis first said she could return to work.
A worker who is unable to return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La. 1981). In the recent case of Culp v. Belden Corporation, 432 So.2d 847, (La.1983), the Louisiana Supreme Court stated:
"... where pain is the linchpin to make out a prima facie case for a worker's classification in the odd lot category, the *696 pain accompanying routine physical tasks and attempts to return to work must be substantial, serious, intense and/or severe."
Mrs. Parks' only effort to return to work was made on December 14, 1981, nine days after the accident. This was before any doctor recommended that she return to work. At trial she testified that she did not feel she could perform her duties as a nurse's aide without some pain. She did not specify what duties would be particularly difficult nor was there any evidence that she had difficulty performing routine tasks at home.
Of the medical experts, only Dr. Mayeux felt Mrs. Parks was unable to work. Drs. Davis and Morgan both felt she could return to work. The testimony of the treating physician is entitled to greater weight than that of another physician who has not had frequent contact with the plaintiff. Gowers v. Gour, 350 So.2d 935 (La. App. 2d Cir.1977), writ denied 352 So.2d 1046 (La.1977). The testimony of a specialist should be accorded greater weight than that of a general practitioner. Martinez v. Equitable Equipment Company, 330 So.2d 634 (La.App. 4th Cir.1976).
In this case the only doctor testifying that Mrs. Parks cannot work is a general practitioner who had only seen her on a few scattered occasions. Dr. Davis was the treating physician and an orthopedic surgeon who recommended that she return to work as of February 12, 1982. Dr. Morgan saw Mrs. Parks only once quite some time after the accident, but he is an orthopedic surgeon specializing in hand cases. It was his opinion that Mrs. Parks could work.
Based on the above facts, we hold that the trial court did not err in failing to find Mrs. Parks totally and permanently disabled. She was correctly found to be temporarily disabled through May 23, 1982.
Colonial argues that because Dr. Davis stated that Mrs. Parks could return to work as of February 12, 1982, the period of temporary total disability ended then. We disagree. It is clear that at that time Mrs. Parks had not been discharged from treatment, and she was advised to continue to wear the splint at all times while she was working. Not until the April 29 visit was Mrs. Parks released for work without substantial limitation. See Wainwright v. Files Timber Company, Inc., 404 So.2d 1287 (La.App. 2d Cir.1981). The report of this visit dated May 25 was properly relied on in terminating temporary total disability benefits at that point. Thus the period of total disability was correctly set from December 5, 1981 to May 23, 1982.

PARTIAL DISABILITY
The trial court found that Mrs. Parks is partially disabled as a result of this accident and awarded her benefits at the minimum rate of $26.80 per week for 450 weeks pursuant to LA-R.S. 23:1221(3). Mrs. Parks argues that the amount of compensation should have been $89.33 per week and Colonial asserts that there was no partial disability. Because we find that Mrs. Parks was not partially disabled, we do not reach the issue of amount of compensation.
In Stracener v. United States Fidelity & Guaranty Company, 420 So.2d 1101 (La. 1982), the Louisiana Supreme Court stated:
"In order to recover benefits for partial disability under the above provision, plaintiff must show that his injury prevented him from performing the `duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience.'"
Aside from Mrs. Parks' general statement that she does not feel she can perform her duties as a nurse's aide, there is no evidence that she cannot do those or other similar duties. Both specialists testified that she could do the work, and both of these doctors appear to be familiar with the duties involved in such a job. In view of these facts, the trial court was clearly wrong in finding that Mrs. Parks was partially disabled.

*697 SCHEDULE LOSS
Mrs. Parks is entitled to a schedule loss under LA-R.S. 23:1221(4). Mrs. Parks asserts that, if this provision is applicable, such a loss should be awarded for loss of a hand; and Colonial urges that the award should be limited to loss of a finger.
Dr. Davis's opinion was that Mrs. Parks had suffered a 15% functional disability in her finger. He declined to assign a percentage of disability to the hand as a whole stating that "the impairment should be called against the finger itself." Dr. Morgan assigned a 40% rating to the finger and related it to the hand by assigning a 6% rating. However, he made it clear that the injury was only to the finger and that such a percentage rating could be related to the hand, the arm, and the body as a whole without a physical disability existing in the expanded areas.
We find that the evidence in this case has failed to relate the finger injury to the hand as a whole other than that the finger forms a component part of the hand. See Nash v. Knoblock, 381 So.2d 404 (La.1980). Mrs. Parks' award should be made pursuant to LA-R.S. 23:1221(4)(c) which provides, "For the loss of any other finger, or a big toe, sixty-six and two-thirds per centum of wages during twenty weeks." Using Dr. Morgan's rating, the compensation will be at a rate of $35.73 per week for twenty weeks (40% of $89.33).

PENALTIES AND ATTORNEY'S FEES
Mrs. Parks received compensation for total disability from the time of injury until May 23, 1982. The termination was based on the report of the treating physician in the case and a specialist in the field. The trial court did not err in finding that benefits were not arbitrarily or capriciously terminated.
In any event, Colonial is an insured employer and cannot be held liable for penalties and attorney's fees under LA-R.S. 23:1201.2. Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.1979), writ denied 379 So.2d 1102 (La.1980). The worker's compensation insurer, Ranger Insurance Company, was not a named defendant in this case and cannot be cast in judgment.

DECREE
For the foregoing reasons, that portion of the trial court judgment awarding plaintiff benefits for partial disability in the amount of $26.80 per week for 450 weeks is reversed and set aside.
It is now ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Linda Parks, and against defendant, Colonial Nursing Home, for weekly benefits of $35.73 from May 23, 1982, for a period of twenty weeks for her schedule loss of a finger, with legal interest from due date until paid, with credit to be given for payments thereon made by the defendant.
In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed equally between plaintiff, Linda Parks, and defendant, Colonial Nursing Home.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
DOMENGEAUX, J., concurs in the result.

ON APPLICATION FOR REHEARING
PER CURIAM:
Both appellant and appellee have applied for a rehearing in this case. Both applications are denied.
Defendant-appellant has called our attention to the fact that in our resolution of the case we failed to apply LSA-R.S. 23:1223. Appellant is correct. We should have done so. See Touchet v. Broussard, 414 So.2d 397 (La.App. 3rd Cir.1982). Under the circumstances we amend our opinion and judgment to reflect that plaintiff is not entitled to any award for the schedule loss, LSA-R.S. 23:1221(4), for the reason that her award for temporary total disability, LSA-R.S. 23:1221(1), is greater than the amount due under the Schedule Loss.
Section 1223 reads:

*698 § 1223. Deductions from benefits
Where compensation has been paid under subdivisions (1), (2), or (3), of R.S. 23:1221, the amount of such payment shall be deducted from any compensation allowed under subdivision (4) thereof or under Sub-part C of this Part."
When the deduction, or credit, is applied, the credit eats up the amount due for the schedule loss.
Plaintiff-appellee contends that the applicable minimum compensation is $55.00 per week, and we erred in placing the schedule loss at $35.73 for twenty weeks. The point is moot. The period of temporary total disability equaled approximately twenty weeks also. The amount of the judgment for that period was $89.33 per week. Therefore, it is immaterial whether the schedule loss should be calculated at $55.00 or $35.73 for twenty weeks.
Our opinion on original rehearing is accordingly amended to eliminate the award for the schedule loss.