YELYERTON, Judge.
This workmen’s compensation case was presented to the trial court as a claim for partial permanent disability benefits. The trial court awarded benefits for partial permanent disability and also penalties and attorney’s fees. From this judgment defendants have appealed. We reverse.
The case involves only the question of partial permanent disability because of a prescription problem with possible other claims. Plaintiff’s pleadings initially demanded benefits for total permanent disability, but the petition was met with an exception of prescription since more than a year had passed when the suit was filed from the date the injury manifested itself. At the beginning of the trial plaintiff consented to a ruling maintaining the exception of prescription as to any claim for total disability, leaving for the merits only the questions of whether the demand could be proved as to either partial permanent disability or a scheduled loss disability claim. At the trial plaintiff apparently did not pursue the claim for loss of a physical function as no evidence was adduced bearing on that claim. In any event, we note that the scheduled loss disability claim, like the total and permanent disability claim, was prescribed. Wright v. Aetna Life and Cas. Co., 360 So.2d 235 (La.App. 1st Cir.1978), appeal after remand 405 So.2d 1166 (La.App. 1st Cir.1981).
Plaintiff was injured on May 31,1980, on a pipeline construction job near New Iberia, Louisiana, where he was employed by Gregory & Cook, Inc., as a laborer. While guiding a winch line on a road boring machine, he fell twisting his right knee. The accident happened on a day late in the week and plaintiff continued to work that day and the next. During the weekend the knee became swollen and painful. After he reported to work early the following week, he went to see Dr. Gregory Savoy in Mam- *991 ou, Louisiana. The doctor diagnosed a knee strain and gave plaintiff a prescription of antibiotics. He also recommended bed rest with elevation of the leg. Dauzat followed the doctor’s orders. He returned to work the following Saturday, June 8.
Except for these few days following the accident, plaintiff never lost a day of work as a result of the injury. The time that elapsed between the date of the accident, May 31,1980, and the date of trial, September 28, 1982, was a period of some 28 months. During this time plaintiff worked, as he had in the past, whenever work was available. The nature of his employment required that he go from one employer to another on different pipeline jobs. He stayed on the job where he was injured with Gregory & Cook, Inc., for two months after the injury. A week after he left the Gregory & Cook job he went with the Sun Land Construction Company for three months, this job ending on November 10, 1980. From sometime in January to the end of March, 1981, he worked for L.S. Womack. From August 23, 1981, until October 29, 1981, he was on a job for W.L. Golightly. Finally, he did a job with Ashy Pipeline Construction Company that lasted three weeks in November, 1981. He frankly admitted that the reason he was unemployed during the several months preceding the trial date was not because of his injury but because pipeline construction had slowed down.
Plaintiff worked as a pipeline construction laborer on each of these jobs. He was a member of a pipeline construction worker’s union local, and received all of his jobs through the local. He has never withdrawn his name from the union list for job availability, and has accepted every job offered him. At no job did he receive pay less than what he was getting at the time of his injury. There is no indication in the record that his work ability or his employability has suffered because of the accident. To the contrary, he admitted that on every job he did everything he was required to do as a pipeline construction laborer. He admitted that he has told neither his union local nor any employer that his ability to work was impaired; he has never refused a call for work from his union local; and he declared that he was available for work at the time of trial. He never missed a day of work and never left the job before the day was done. He never quit any of the five jobs he held since his injury because of the injury; he left each job only because the job was finished. Plaintiff also admitted that he has never sought work except through his union and that he has not sought any kind of employment other than as a pipeline construction laborer.
The trial court made a finding of fact that plaintiff could not “perform all of the duties which he was customarily engaged in when injured, or duties of the same or similar character, nature or description for which he was fitted by education, training or experience.” La.R.S. 23:1221(3), as amended, provides that an employee is deemed partially disabled if he is unable “to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience ...” The evidence clearly shows from plaintiff’s own testimony that he has been able to perform all the duties and that he has in fact performed all the duties in which he was customarily engaged when injured. There was no other testimony beside plaintiff’s regarding his work performance. Accordingly, the trial court’s finding of fact that plaintiff could not perform all the duties which he was customarily engaged in when injured is clearly wrong. See Augustine v. Courtney Const. Co., etc., 405 So.2d 579 (La.App. 3rd Cir.1981), writ denied 407 So.2d 735 (La.1981).
Plaintiff defends the judgment in his favor by urging that the trial court made a finding supported by the evidence that, though he has worked, he did so in substantial and appreciable pain. The trial court said:
“The Court believes that the plaintiff does suffer pain in his knee at irregular intervals and will probably suffer sub *992 stantial pain when doing heavy or laborious work, such as a laborer on a board run. He will be limited in his duties since he will not be able to squat, walk on uneven terrain, or lift heavy objects. The Court places heavy reliance on the plaintiff’s work history and his testimony stating that the reason he continued to work was because of the needs of his family.”
Plaintiff’s work history, on which the trial court placed heavy reliance, comes from plaintiff’s testimony alone. While his testimony can be construed to describe substantial and appreciable pain, whether he actually suffered substantial and appreciable pain is not supported by the testimony of his own doctor, who was the only medical expert to testify in the case, nor is it supported by any demonstrative fact in the record. We do not interpret the trial court’s quoted reasons for judgment as meaning that plaintiff worked in substantial and appreciable pain.
Dr. Gregory M. Savoy of Mamou, Louisiana, first saw plaintiff on June 3,1980, four days after the accident. The right knee was swollen and painful. X rays were negative. Dr. Savoy prescribed antibiotics and bed rest, and ordered plaintiff to return in two weeks. Plaintiff went back to work on June 8. He returned to see the doctor, as instructed, on June 18. At this time the knee was no longer swollen, there was no tenderness, there was a full range of motion, and plaintiff was given a release to return to work.
It was not until August 4,1981, almost 14 months later, that plaintiff returned to Dr. Savoy. He was not working at that time. He told the doctor on this occasion that his knee would give out on him while walking and that it would swell and become painful from time to time. The doctor noted no redness on that occasion as he had on the initial visit. However, he prescribed physical therapy and it was his diagnosis that there was some inflammatory process in the joint, probably from a ligament tear, causing the instability and occasional swelling and- pain. The doctor thought that these symptoms suggested that a chronic problem had developed as a direct result of the first injury. There was evidence that shortly before this visit plaintiff had fallen in a hole while working in his garden. He did not tell Dr. Savoy about this fall.
About six months later, on February 5, 1982, plaintiff returned to see Dr. Savoy for the last time. He complained of constant pain that was worse with standing, associated with swelling of the joint. The knee remained unstable. The doctor prescribed an anti-inflammatory agent and pain medication.
The doctor’s deposition was taken for trial purposes. He opined — and this is the only medical opinion in the record — that based on what plaintiff told him the knee would probably give him some trouble the rest of his life. It will not be as mobile as it once was. Plaintiff cannot assume the awkward positions required of heavy laborers. He cannot jump from any height to the ground, even if the distance is only two feet to three feet. He cannot squat or assume other awkward positions. It was his opinion that the injury was permanent. He thought there was an inflammatory reaction present.
Plaintiff himself testified that the pain had become more or less constant and that it was aggravated with any kind of activity. He described the various home remedies he resorted to such as elevation of the leg and use of over-the-counter pain medication. These remedies provided relief. His testimony in this regard was corroborated by that of his wife. Both testified that plaintiff regularly wore trousers to work which Mrs. Dauzat had slit in the right knee area to accommodate the swelling that was usually anticipated to occur each day as the day wore on. However, both testified that plaintiff regularly worked in his garden. Plaintiff said he continued to hunt, though he did not “hunt as far” as he once did.
Dr. Savoy was never asked to express an opinion regarding the nature or degree of plaintiff’s plain. In fact, whether he was of the opinion that plaintiff suffered any pain at all can only be deduced from plaintiff’s *993 complaints to him and the fact that he prescribed pain medication on the last two occasions he saw him. On neither of those two occasions, fourteen months and twenty months, respectively, after the date he was found by the doctor to be symptom free, did plaintiff exhibit any objective findings of the swelling about which he complained. Under these circumstances we cannot find that Dr. Savoy’s testimony was supportive of plaintiff’s claims of substantial and appreciable pain.
Plaintiff testified by deposition before trial that after the accident he worked as a straw boss and thereby avoided the harder work of a pipeline construction laborer. At trial he admitted that most of the time he was employed simply as a construction laborer and that he did whatever the job called for. He also testified there were times when his co-workers helped him and that he “babysat” his knee on every job. The payroll records in evidence reflect that on one job plaintiff worked with as many as twelve people, yet he called not a single co-worker who might have substantiated his testimony.
The claimant has the burden of proving to a legal certainty and by a reasonable preponderance of the evidence that he is disabled. Miller v. Electrical and Pneumatic Services, 434 So.2d 602 (La.App. 3rd Cir.1983). Whether the claimant has carried the burden of proving disability must be determined by examining the totality of the evidence, including both lay and medical testimony. Miller, supra. The claimant who alleges disability because of inability to perform his usual and regular duties without substantial or appreciable pain must establish the existence of that condition by a preponderance of the evidence. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980). A claimant will not be held to be disabled solely because he suffers some residual pain and discomfort when he attempts to work following a work-related accident. The residual pain and discomfort in such circumstance will be disabling only if it is substantial or appreciable pain. Fusilier v. Shurt-leff & Andrews, Inc., 432 So.2d 1106 (La.App. 3rd Cir.1983). Whether a claimant’s pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case. Fusilier, supra.
Since we are not concerned here with a total permanent disability inquiry, but with a partial permanent question only, our task is limited to a determination of whether the worker can perform his former duties without substantial pain. The cases of Culp v. Belden Corp., 432 So.2d 847 (La.1983) and Parks v. Louisiana Health Care Ass’n, 436 So.2d 693 (La.App. 3rd Cir.1983) tell us that in such cases “the pain accompanying routine physical tasks and attempts to return to work must be substantial, serious, intense and/or severe.” We have found that the trial judge was clearly wrong in finding that plaintiff was unable to do his work. If we interpret his reasons for judgment correctly, we think he was right in his finding that plaintiff’s present problem of pain is at “irregular intervals” and that whatever future problem of substantial pain that may present itself is speculative. This is not a sufficient basis on which to make an award of benefits. There is certainly nothing in the trial court’s reasons for judgment on which we can base a presumptively correct factual finding of constant pain. Plaintiff’s trial testimony was that his problem had become “constant pain.” We interpret the trial judge’s decision to be a rejection of plaintiff’s “constant pain” testimony in favor of what the trial court chose to describe as “pain at irregular intervals.”
On the facts of this case we find that plaintiff has failed to prove disability and, for the reasons assigned, we reverse the judgment of the district court and render judgment dismissing his claims at his costs.
REVERSED AND RENDERED. ■