506 So.2d 1300 (1987)
Edwin Drew SIMMONS, Jr., Appellant,
v.
FORD, BACON & DAVIS CONSTRUCTION CORPORATION and Aetna Casualty & Surety Company, in Solido, Appellees.
No. 18647-CA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1987.
C. William Gerhardt & Assoc. by C. William Gerhardt, Shreveport, for appellant.
*1301 Theus, Grisham, Davis & Leigh by Thomas G. Zentner, Jr., Monroe, for appellees.
Before SEXTON, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The plaintiff in this workers' compensation case sustained a heavy blow to the middle finger of his left hand. Claiming that the injury caused a lack of flexion and sensitivity that interfered with his ability to do heliarc welding, he sued for benefits for total, permanent disability. The trial court found that although the injury might interfere with heliarc welding, the plaintiff did not prove that he was disabled. The court therefore awarded him a scheduled loss of $732 based on a residual 20% disability of the finger. The court also found that the insurer was arbitrary and capricious in failing to process plaintiff's claim timely; it therefore awarded statutory penalties and attorney fees of $1,500. Plaintiff now appeals, seeking an increase in both benefits and attorney fees. For the reasons expressed, we reverse and render.
The plaintiff, Edwin Drew Simmons, was 62 years old at the time of the injury and had over 30 years experience in welding. For the past 20 years, he had done the heliarc process almost exclusively. On May 6, 1982, he was employed by Ford, Bacon and Davis as a heliarc welder on a jobsite in Hodge, Louisiana, and was being paid $14.05 an hour. Close to the end of his night shift, he was not welding but helping some other workers with tacking. He was standing on a scaffold, using his right hand to guide into place a heavy metal pipe that was being carried by a cherry-picker. The machine jerked, knocking the pipe out of his right hand and slamming it against his left hand, which was openly extended on a beam. The impact was mostly on the middle finger and strong enough to knock him off the scaffold. He was in great pain so he went to the jobsite nurse. She advised him to come back the next day for an X-ray.
The next day, when he came to the jobsite, he was sent straight to personnel and told he was laid off. Although he testified by deposition that the reason for the layoff was "lack of production," his application for unemployment attributed it to "reduction in force."
After unsuccessfully treating his swollen finger at home for several weeks, Simmons went to his family doctor in Vivian, Dr. Haynes, on June 1. He complained of pain in the proximal PB joint of the left hand's long finger. Dr. Haynes's X-ray was negative; he prescribed anti-inflammatory medicine and instructed Simmons to soak the finger. Simmons's complaints were serious, and in July he said he could not bend the finger. The doctor found that Simmons had an almost complete range of motion, but that bending the finger was painful. By October, Simmons was still complaining but there were no objective symptoms of pain; however, Dr. Haynes denied having any reason not to believe Simmons. In November, Simmons had multiple complaints unrelated to the injury, but he did complain of a burning sensation from his elbow to the tip of his finger. Dr. Haynes thought that Simmons had posttraumatic arthritis in his finger, either caused or aggravated by the injury.
Simmons saw Dr. Haynes for a final visit in January 1983. Dr. Haynes's recommendation was somewhat confused. He said that if Simmons needed a long finger with a full range of motion and sensitivity, then he would have released him to do the same kind of work. He then corrected himself to say that he did not think Simmons could have welded in his condition at the time. He also remarked that he probably would not have released Simmons if the insurer had inquired. R.p.p. 159-160.
The other expert was Dr. Rambach, who testified by deposition. He saw Simmons in August 1983, over a year after the injury. Simmons complained of intermittent discomfort, stiffness and lack of flexion. His examination showed no swelling, a good range of motion, and soreness only upon maximum bending. His X-rays showed an "old chip fracture," which he felt might have been undetectable when Dr. Haynes X-rayed. He diagnosed a broken *1302 middle phalanx at the middle joint, and said this would be consistent with the complaints. He assessed a permanent residual disability of 20%, but said he felt even this low impairment would interfere with heliarc welding. He later admitted he was not particularly knowledgeable about heliarc welding.
Simmons testified that he had no problems with his left hand before this accident. He attempted to explain how he welded; the upshot was that he would hold the heliarc welding gun in his right hand and feed the 3/32" rod with his left hand. Coordination was necessary to maintain a smooth, complete stream without cracks. The rod rested mainly on his middle finger, which he used to oscillate or turn the rod gently for maximum control. He went to very great pains to stress the dexterity and concentration required to keep proper tension and oscillation on the rod. With decreased sensitivity in his middle finger, he claimed, this is impossible. He admitted, however, that he wears a glove when feeding the rod, but that he still must be able to feel through the glove. Simmons's Dep., 65. He said that other kinds of welding, stick-rod and acetylene, are not as refined and do not require the same dexterity as heliarc. He admitted having training in these other kinds of welding, but complained that he was so out of practice with them that he would not be able to pass the tests. He admitted he had not attempted those tests. He tried to use a friend's heliarc machine about five months before trial but he could not oscillate the rod. He applied for unemployment benefits in Texas, claiming Ford, Bacon and Davis had laid him off because of a reduction in force. As a union member, he did not actively solicit work, but made himself available through union hall. He has not been sent on any jobs since his accident.
To support the claim for penalties and attorney fees, Simmons's attorney, C. William Gerhardt, testified. He said he sent letters to the insurer, Aetna, that were simply not answered. Three months after suit was filed, Aetna sent Simmons to Dr. Rambach and received his report in September 1983. It did not offer to pay any benefits until a year and a half later, in March 1985. Gerhardt claimed that his various efforts in dealing with the recalcitrant insurer totalled 75 hours, including 25 to 30 for research.
Aetna produced the testimony of David Emmons, a welding instructor at the Delta-Ouachita Vo-Tech school. He corroborated Simmons's statement that stick-rod and acetylene welding are easier than heliarc. He said that he taught his heliarc students not to oscillate the rod, but acknowledged that some older schools taught oscillation. He also admitted that a welder must apply some pressure to the rod and that he had never tried to weld with a numb finger.
Aetna finally produced the testimony of George Henry Page, senior rehabilitation consultant with Constitutional Rehabilitation Co. in Shreveport. He testified that Simmons's welding skills could be transferred to other positions such as that of millwright supervisor or a sample pattern maker, but that these jobs were not generally available in the area. Page drew on some of Simmons's old job experience as a taxicab driver for a couple of years after World War II. This, according to Page, would qualify him as a bus driver or an escort driver. Simmons's limited experience running a country store would qualify him to be a cashier, teller or ticket-seller. Page admitted that he was not an expert in welding and has never been asked whether Simmons could weld.
The trial court delivered extensive written reasons for judgment. It summarized the evidence and found that the only residual effects of the accident were a loss of some flexion and sensitivity. The court concluded that this was not disabling. It was persuaded by Mr. Emmons that heliarc welding did not require the oscillation that Simmons claimed he could not do. The court did not accept Simmons's assertion that he could not work; rather, it noted his failure to apply for work while receiving unemployment benefits, suggesting an ability to work. It discounted Dr. Rambach's conclusion as to Simmons's working ability, noting that the doctor knew little about *1303 welding except what Simmons had told him, but it accepted his assessment of a 20% disability. The court therefore awarded 20% of the scheduled disability for loss of a finger, LSA-R.S. 23:1221(4)(o) and (c) (1975). It also concluded that Aetna's conduct in this case was dilatory, arbitrary and capricious, entitling Simmons to statutory penalties and reasonable attorney fees of $1,500. LSA-R.S. 23:1201.2.
Simmons has appealed. He claims the trial court committed manifest error in:
(1) failing to find him partially disabled under LSA-R.S. 23:1221(3) (1975) in the face of "overwhelming and uncontroverted evidence" that he could no longer perform the duties in which he was customarily engaged when injured; and
(2) awarding only $1,500 for 75 hours of legal work performed in the effort to collect Simmons's benefits.

ISSUE NO. 1: DISABILITY
Since there is no dispute that Simmons suffered an on-the-job injury, the issue is whether the injury translates to disability or, as the trial court held, only a scheduled loss. This case is governed by the worker's comp law as it stood before the 1983 revisions. LSA-R.S. 23:1221(1) (1975) provides that an employee is deemed temporarily and totally disabled if he is unable to engage in any occupation for wages, whether or not the same or similar occupation as that in which he was customarily engaged when injured and whether or not an occupation for which he was at the time of the injury particularly fitted by reason of education, training and experience. The statutory definition is met, and the claimant is entitled to benefits for temporary, total disability, if he proves to a legal certainty and by a preponderance of the evidence the nature and the extent of his disability. Campbell v. Luke Const. Co., 465 So.2d 688 (La.1985); Jaeckle v. Dresser Indus. Inc., 457 So.2d 646 (La. 1984).
The trial court found that Simmons failed to show by a preponderance of evidence that he was unable to weld. This was based in large measure on an assessment of Simmons's credibility and we are reluctant to disturb a credibility call. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). The trial court was apparently impressed that Simmons could hold the welding rod perfectly well on the witness stand. R.p.p. 177-178. The court's conclusion was also supported by Simmons's own admission that he had training in the "similar" duties of stick-rod and acetylene welding, which he had not attempted to undertake since his accident. According to both Simmons and Emmons, these methods are both easier than heliarc welding, requiring less dexterity. The trial court was not in error to find that Simmons did not show, at the time of trial, that his injury would not prevent him from performing these less demanding procedures. Consequently the trial court was in part correct in finding Simmons not currently disabled.
The same is not true for the entire period between the accident and the trial. The accident unquestionably subjected Simmons to severe pain; at first he thought his finger had been cut off. R.p. 183; Simmons Dep. 33. There was swelling and continued pain that led him to seek treatment from Dr. Haynes from June 1982 until January 1983. Dr. Haynes testified that he believed the complaints of pain and would not have released Simmons to return to work. R.p. 156, 161. In its reasons for judgment, the trial court completely failed to mention Dr. Haynes's testimony, and we consider it crucial. It corroborates the subjective complaints of pain and supports a finding of a preponderance of evidence to prove that Simmons was suffering from substantial pain for a period of time after the accident. This substantial pain rendered him totally disabled. See Guidry v. Ford, Bacon & Davis Const. Corp., 376 So.2d 352 (La.App. 3d Cir.1979); Malone & Johnson, Workers Compensation 2d, § 275, and citations therein. This disability was proved regardless of the percentage of anatomical impairment that may have been assessed.
*1304 Aetna argues that the small disability of the finger fits more nearly into the scheme of a scheduled disability under 23:1221(4) (c, o). The Supreme Court explained the relationship between the general disability and the specific loss provisions of the workers comp statute in Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982):
The statute does not explicate the relationship between the specific loss schedule and the total and partial disability provisions. In a case in which a specific loss also results in total or partial disability for the worker, the act does not give either remedy priority or state whether the remedies are cumulative or optional. The interaction of judicial opinions and legislative amendments over the lifetime of the act presents a checkered pattern of interpretations on the question of disability vis a vis schedule loss provisions. W. Malone & H. Johnson, Workers' Compensation in 13 Louisiana Civil Law Treatise, § 252 (1980); Comment, The Conflict Between the Disability and Specific Injury Clauses of the Louisiana Workmen's Compensation Act, 11 Tul.L.Rev. 86 (1936).
The prevailing interpretation is that an employee may not recover compensation both for a total or partial disability and for a specific loss but he may recover for one or the other, the employee being permitted recovery under whichever provision affords him greater compensation. [Citations.] This rule is a workable one in cases which present a clear-cut choice between remedies affording fixed amounts of compensation. * * *
The general disability provisions and the specific loss provisions, * * * therefore, are parallel remedies designed to compensate an employee for his loss of earning capacity. The pervasive canon of statutory construction is that, where two remedies are created side by side in a statute, the claimant should have the benefit of the more favorable. 2 Larson [Workmen's Compensation Law] § 58.25, p. 10-285. 418 So.2d at 528, 529.
There is no question that the use of the middle finger is central to Simmons's welding ability and the injury impaired it. Simmons should have received the more favorable benefits for disability. See Lang Pham v. Delta Petroleum Co., 503 So.2d 149 (La.App. 5th Cir.1987). The cases of Newell v. USF & G, 368 So.2d 1158 (La. App. 3d Cir.1979) and Nash v. Knoblock, 381 So.2d 404 (La.1980), cited by Aetna, are distinguishable. In Newell, both medical experts asserted that the plaintiff suffered no pain, whereas both Dr. Haynes and Dr. Rambach accepted Simmons's complaints. In Nash, a divided court found no evidence to link the amputated finger to the use of the hand, presumably in the plaintiff's customary employment. By contrast, everyone agreed in the instant case that pain and loss of feeling and dexterity in the middle finger would affect Simmons's welding ability. We feel that the particular facts of this case mandate a holding that the plaintiff was disabled and the trial court was manifestly erroneous.
Under Section 1221(1), the claimant is entitled to benefits "during the period of such disability." When Simmons last visited Dr. Haynes in January 1983, he was still in pain. However, when he visited Dr. Rambach in August 1983, he was no longer complaining of pain but of "discomfort" that the doctor characterized as "intermittent." Rambach Dep., 6. Dr. Rambach noted that there was a full range of motion and the ligaments were intact. He felt that Simmons had reached maximum recovery. Maximum recovery is the appropriate cut-off time for benefits for an injury that is not permanent. Johnson v. Monroe Pulpwood Co., 505 So.2d 862 (La.App. 2d Cir.1987); Price v. Fireman's Fund Ins. Co., 502 So.2d 1078 (La.1987). At this stage the pain should no longer be so substantial as to prevent Simmons from engaging in stick-rod and acetylene welding, for which he has training.
Simmons is therefore entitled to benefits for temporary, total disability until August 25, 1983, with the appropriate penalties and interest, subject to credit for any amounts paid under the prior judgment. A new judgment will be rendered accordingly.

*1305 ISSUE No. 2: ATTORNEY FEES
The trial court found that Aetna's failure to pay was arbitrary and capricious. This activated the attorney fee provision of LSA-R.S. 23:1201.2. The court imposed a fee of $1,500. Although the trial court is vested with great discretion in the assessment of a reasonable fee, Reynolds v. Wal Mart Stores, 445 So.2d 490 (La.App. 2d Cir.1984), we will look beyond the judgment to the degree of skill and work involved, the number of court appearances, the depositions, the office work, and the time spent in court. Hebert v. Loffland Bros., 363 So.2d 969 (La.App. 3d Cir. 1978). We also consider the additional time and effort expended on appeal. Chelette v. Amer. Guar. & Liab. Ins., 480 So.2d 363 (La.App. 3d Cir.1985). This case was difficult for the plaintiff because of Aetna's conduct. Aetna was slow in responding to the plaintiff's initial letters, and hesitant to process the claim even after suit was filed; it did not send Simmons to the doctor until three months after suit. It filed answers to plaintiff's interrogatories nearly two years after they were propounded. We have little trouble appreciating the difficulties engendered by these dilatory acts, and the 75 hours spent by plaintiff's attorney on this case is not disputed. We feel that an award of $3,500 would amply compensate plaintiff's attorney, considering all the circumstances of this case. Cf. Scott v. Sears Roebuck, 406 So.2d 701 (La.App. 2d Cir. 1981). Judgment will be rendered accordingly.
Judgment is rendered as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, EDWIN DREW SIMMONS JR., and against the defendants, FORD, BACON AND DAVIS CONSTRUCTION CORPORATION and AETNA CASUALTY & SURETY COMPANY, in solido, for weekly compensation in the sum of One Hundred, eighty-three and NO/100 ($183.00) dollars per week, commencing May 13, 1982 and ending August 25, 1983, with each such payment to bear legal interest from the date due until paid, together with a penalty of 12% on the amounts due, but subject to credit for any amounts paid pursuant to the prior judgment; plus the sum of Three Thousand, five hundred and NO/100 ($3,500.00) dollars to plaintiff's attorneys, with legal interest thereon from date of judicial demand until paid; plus all outstanding medical fees, expenses, and all costs of court, including expert witness fees of $200.00 to Dr. Rambach and $250.00 to Dr. Haynes.
Costs of appeal are assessed to appellees.
REVERSED AND RENDERED.